UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TROY REGIS,

    *Plaintiff*,

  v.

KRISTI NOEM,

    *Defendant*.

Civil Action No. 24‑2405 (SLS)

Judge Sparkle L. Sooknanan

### MEMORANDUM OPINION

Troy Regis, a former fingerprint specialist at the United States Secret Service, brought this lawsuit to recover damages under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act, alleging discrimination, retaliation, and a hostile work environment. He alleges that his supervisors at the Secret Service discriminated against him based on his race and age by placing him on a performance feedback plan, revoking his telework privileges, and subjecting his work to additional scrutiny. The Defendant has moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons below, the Court denies the motion in part and grants it in part.

### BACKGROUND

#### A. Factual Background

The Court draws the facts, accepted as true, from the Plaintiff's Complaint. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023).

Troy Regis is an "African American, born in Trinidad and Tobago," who "was 59 years of age" at the time of the following events. Compl. ¶ 6, ECF No. 1. He worked at the Secret Service as a "Fingerprint Specialist" in the "Forensic Services Division for 14 years," *id.* ¶ 7, before his

supervisors "instituted a concerted effort to remove older and African American or Black employees from the Forensic Services Division," *id.* ¶ 8.

According to Mr. Regis, his supervisors "exclud[ed] [him] and other older African American employees from training opportunities, . . . [and] assignments that would assist in their development as specialists as well as their mastery of new technologies." *Id.* ¶ 9. His supervisors also "singled them out and over scrutinized their work to set them up for failure and removal." *Id.* Mr. "Regis complained [to his supervisor's boss] . . . that he had been treated less favorably than others outside his protected classes in that [his supervisors] were subjecting him to greater scrutiny and accusing him of lapses in or poor performance when the objective evidence illustrated the false nature of their claims." *Id.* ¶ 19. Despite similar complaints from others in the organization, no action was taken. *See id.*

Mr. Regis then "filed a formal EEO complaint concerning the discriminatory conduct" on December 31, 2022. *See id.* ¶¶ 5, 19. His "supervisors were aware of his protected activity, namely formal and informal complaints of discrimination and retaliation[.]" *Id.* ¶ 27. And "soon after," his supervisors "placed [Mr. Regis] on a [Performance Improvement Plan (PIP)]," *id.* ¶ 19, "[d]espite objective evidence which demonstrated that [he] was on track to meet the requisite number of completed cases for acceptable performance," *id.* ¶ 11. His supervisors also "falsely contended that [Mr.] Regis was not on track to complete the requisite number of cases for acceptable performance and that the cases he had processed contained too many errors," *id.*, in spite of evidence that his "level of errors or case revisions were no greater than the level of errors committed or case revisions of other Fingerprint Specialists who were not African American, Trinidadian born, over the age of 40 and who had not engaged in protected activity," *id.* ¶ 12.

Although the "PIP contained objectively unreasonable requirements," Mr. Regis nevertheless "completed the requisite number of cases for acceptable performance in the rating year (which ended just days after the PIP ended) and made no more errors during the PIP than was typical of case processing[.]" *Id.* ¶ 13. But his supervisors "determined that [Mr.] Regis failed to successfully complete the PIP," and "gave [him] an unacceptable performance rating for the rating year." *Id.* ¶ 14. While "[t]he pressure and pace of properly processing cases is great," the "scrutiny and false accusations [from his supervisors] concerning the pace in which [Mr. Regis] was completing work and the manner in which he was processing cases . . . added unduly to th[is] typical stress." *Id.* ¶ 15. These "verbal reprimands" "reflected [his supervisors'] discriminatory animus against African Americans and older employees." *Id.* ¶ 17. Further, Mr. Regis was required to "participate in weekly []check-ins[] with a non[-]supervisory employee" that "Fingerprint Specialists outside of [his] protected classes were not similarly required to participate in" and which "took away from [his] normal work day." *Id.* ¶ 16. His supervisors also "canceled [Mr. Regis's] telework privileges," even while they were not canceled for "Fingerprint Specialists outside his protected classes[.]" *Id.* ¶ 18.

## B.    Procedural Background

Mr. Regis filed this lawsuit against the Secretary of the U.S. Department of Homeland Security, alleging discrimination, retaliation, and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act.[1] *See* Compl. at 1. On February 12, 2025, the Defendant moved to dismiss this case pursuant to Federal Rules

---

[1] The Plaintiff named former Secretary of the U.S. Department of Homeland Security, Alejandro N. Mayorkas, as the Defendant in the Complaint. The current Secretary of the U.S. Department of Homeland Security, Kristi Noem, is "automatically substituted as a party" in his place pursuant to Federal Rule of Civil Procedure 25(d).

of Civil Procedure 12(b)(1) and 12(b)(6). *See* Def.'s Mot., ECF No. 9. This motion is fully briefed. *See* Pl.'s Opp'n, ECF No. 10; Def.'s Reply, ECF No. 13.

## LEGAL STANDARD

The Plaintiff bears the burden of establishing subject-matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–61 (1992). In reviewing a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), courts "construe the complaint liberally," granting the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (cleaned up).

Under Rule 12(b)(6), a court must dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (cleaned up). But courts need not accept as true "a legal conclusion couched as a factual allegation," nor an inference "unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (cleaned up).

## DISCUSSION

The Defendant urges dismissal of all of the claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *See* Def.'s Mot. at 5–12. The Defendant also argues that Mr. Regis cannot seek compensatory damages under the Age Discrimination in Employment Act (ADEA), and seeks dismissal of that request under Rule 12(b)(1). *See id.* at 12–13. The Court dismisses the hostile work environment claims but denies the motion to dismiss the discrimination and retaliation claims. And the Plaintiff does not appear to be seeking compensatory damages under the ADEA.

### A.    Discrimination

#### 1.    Title VII

Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). To establish a claim under Section 2000e-2(a)(1), a plaintiff must demonstrate (1) that he belongs to a protected class, (2) that he suffered an adverse employment action, and (3) that a causal connection exists between his protected characteristic and the adverse employment action. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). Mr. Regis has plausibly alleged all three elements of his Title VII discrimination claim.

#### a.    Protected Class

There is no dispute that Mr. Regis is African American, Compl. ¶ 6, and thus belongs to a protected class.

#### b.    Adverse Employment Action

Mr. Regis has also suffered adverse employment action. He alleges that his supervisors "excluded [him] . . . from training opportunities, . . . assignments that would assist in [his] development as [a] specialist[] as well as [his] mastery of new technologies[,] and singled [him] out and over scrutinized [his] work to set [him] up for failure and removal." Compl. ¶ 9. He also alleges that his supervisors "gave [him] an unacceptable performance rating," *id.* ¶ 14, "despite [his] objectively superior performance when compared" to "non-African American Fingerprint Specialists," *id.* ¶ 21. And they removed his telework privileges. *See id.* ¶ 18. These allegations clear the bar at the motion to dismiss stage. *See Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024) (requiring "some harm" in the term or condition of employment to constitute an adverse

employment action under Title VII); *see also, e.g.*, *Mitchell v. Garland*, No. 23-cv-2412, 2024 WL 3251217, at \*4 (D.D.C. July 1, 2024) (finding adverse employment action where supervisors "refus[ed] to respond to [the plaintiff's] messages in a timely manner, requir[ed] [the plaintiff] to work on holidays, requir[ed] [the plaintiff] to complete a training that others did not have to complete, [gave the plaintiff] an unfavorable performance rating, and chang[ed] [the plaintiff's] schedule without notice"); *Dixon v. Blinken*, No. 22-cv-2357, 2024 WL 4144105, at \*3 (D.D.C. Sept. 11, 2024) (finding that the "denial or revocation of a telework schedule constitutes an adverse change to the terms, conditions, or privileges of employment" (cleaned up) (collecting cases)).

### c. Causal Connection

Finally, Mr. Regis also adequately pleads a causal connection. A plaintiff may demonstrate causation by showing that he was "treated differently from similarly situated employees who are not part of the protected class." *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005). And Mr. Regis alleges that despite his "level of errors or case revisions [being] no greater than the level of errors committed or case revisions of other Fingerprint Specialists who were not African American," he was treated less favorably than similarly situated employees. Compl. ¶¶ 12, 11–19. At this stage, this is sufficient to link the adverse action to his protected status. *See, e.g.*, *Ross v. U. S. Capitol Police*, 195 F. Supp. 3d 180, 204–05 (D.D.C. 2016) (finding discriminatory motive where the defendant "den[ied] [the plaintiff] the opportunity to perform notwithstanding his protective order (in contrast to other non-African American employees) and . . . by recommending [the plaintiff] for termination as a result of the performance limitation (when no such recommendation was made for a similarly situated white employee)"); *Winston v. Clough*, 712 F. Supp. 2d 1, 10 (D.D.C. 2010) (finding an adequate claim under Title VII where the plaintiff alleges that "that other co-workers outside of [his] protected class used their cell phones more than he did,

yet none was suspended or disciplined for it"); *Ghawanmeh v. Islamic Saudi Acad.*, 672 F. Supp. 2d 3, 16 (D.D.C. 2009) (finding sufficient that the "plaintiff [wa]s asserting that she was treated differently from Saudis and men who applied for the leave she was refused, and who were not fired as a result of seeking that leave, as she was").

The Defendant argues that Mr. Regis has not met his burden, relying on cases finding no causation despite allegations of similarly situated comparators. *See* Def.'s Mot. at 5–7. But those cases involved nothing "more than the bald assertion[s]" of "similarly situated comparator[s.]" *See Mitchell*, 2024 WL 3251217,  at *4 (finding that the complaint failed to provide "facts about the identity, race, or other characteristics of any alleged comparator"); *SS & T, LLC v. Am. Univ.*, No. 19-cv-721, 2020 WL 1170288, at *4 (D.D.C. Mar. 11, 2020) (concluding that the plaintiffs "cannot merely allege that similarly situated leaseholders not owned by persons of Indian-descent were treated differently and then offer 'nothing more in the way of specific facts or allegations associated with this claim'"). But Mr. Regis does more. He alleges that the Fingerprint Specialists outside his protected class committed similar errors. *See* Compl. ¶ 12. Yet they were not subject to a performance improvement plan, *see id.* ¶¶ 11, 12, or similarly scrutinized, *see id.* ¶ 15. And they did not have their telework privileges revoked. *See id.* ¶ 18. These allegations are sufficient at this stage of the proceedings. *See, e.g.*, *Ryan-White v. Blank*, 922 F. Supp. 2d 19, 24 (D.D.C. 2013) ("[S]ince discovery may reveal direct evidence of discrimination, it would be 'incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits.'" (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002)).

### 2.    ADEA

The ADEA prohibits age discrimination in federal employment. 29 U.S.C. § 633(a). An ADEA plaintiff must demonstrate: "that '(1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that his employer took the action because of his membership in the protected class).'" *Bartlette v. Hyatt Regency*, 208 F. Supp. 3d 311, 321–22 (D.D.C. 2016) (quoting *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014)). Mr. Regis makes this showing.

### a.  Protected Class

Mr. Regis alleges that he was 59 years old when the events giving rise to this suit occurred, *see* Compl. ¶ 6, and so he falls within the ADEA's protected class, 29 U.S.C. § 631(a).

### b.  Adverse Employment Action

Mr. Regis also satisfies the second element. To show an adverse employment action, a plaintiff must demonstrate that he has been discriminated against with respect to his "terms, conditions, or privileges of employment." 42 U.S.C. § 2000e–2(a)(1). This requires "some harm respecting an identifiable term or condition of employment," but he need not show that "the harm incurred was significant[, or] . . . serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Muldrow*, 601 U.S. at 355. Mr. Regis alleges that his supervisors excluded him from training opportunities, *see id.* ¶ 9, placed him on a performance improvement plan that required weekly check-ins, *see id.* ¶¶ 11, 16, and cancelled his telework privileges, *see id.* ¶ 18. These allegations survive dismissal at this early stage of the litigation. *See supra*, at 5–6; *see also Wilson v. Cox*, 753 F.3d 244, 247 (D.C. Cir. 2014) (noting courts "generally apply the same approach in ADEA cases" as "in Title VII cases").

### c.  Inference of Discrimination

Finally, Mr. Regis's allegations raise an inference of discrimination. A plaintiff may establish an inference of discrimination through either "direct evidence of . . . animus" or a comparison to a similarly situated employee. *Yuvienco v. Vilsack*, No. 23-cv-186, 2024 WL 727712, at *3 (D.D.C. Feb. 22, 2024). Where a plaintiff relies on a comparison to a similarly situated employee, the plaintiff "must also demonstrate that all of the relevant aspects of his employment situation were nearly identical to those of the other employee." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (cleaned up). Here, Mr. Regis alleges his "level of errors or case revisions were no greater than the level of errors committed or case revisions" of similarly situated Fingerprint Specialists outside of his age group. Compl. ¶ 12. And Mr. Regis experienced less favorable treatment, including exclusion from training opportunities, *see id.* ¶ 9, weekly check-ins that took time away from his normal schedule, *see id.* ¶ 16, and cancellation of his telework privileges, *see id.* ¶ 18. These allegations are sufficient at this stage. *See Swierkiewicz*, 534 U.S. at 514 (finding that a complaint with allegations about the events leading up to an adverse action and the ages of at least some of the relevant persons involved with the adverse action satisfied the pleading standard for an age discrimination claim under the ADEA); *see also, e.g.*, *Golden v. Management & Training Corporation*, 319 F. Supp. 3d 358, 376 (D.D.C. 2018) (finding a plaintiff's allegation that he "was treated less favorably than similarly situated younger managers employed by Job Corps who did not satisfactorily perform their duties during [the plaintiff's] tenure" to be sufficient to make out a claim under the ADEA (cleaned up)); *Washington v. District of Columbia Housing Authority*, 170 F. Supp. 3d 234, 241–42 (D.D.C. 2016) (the plaintiff pleading "that other . . . employees outside of the ADEA's protected class were

treated more favorably than he was" was sufficient to "give [the] plaintiff's ADEA claim facial plausibility").

### B.    Retaliation

A retaliation claim under either Title VII or the ADEA requires that a plaintiff show (1) that he engaged in protected activity, (2) that he suffered a materially adverse action by his employer, and (3) a causal link between the two events. *See Howard R.L. Cook & Tommy Shaw Found. Ex rel. Black Emps. Of Libr. of Cong., Inc. v.   Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013) (retaliation claim under Title VII); *Passer v. Am. Chem. Soc'y*, 935 F.2d 322, 331(D.C. Cir. 1991) (retaliation claim under the ADEA); *see also Tomasello v. Rubin*, 167 F.3d 612, 619 (D.C. Cir. 1999) ("[T]he test for determining retaliation under the ADEA and Title VII is identical."). To establish causation, a plaintiff must demonstrate that his protected activity was the but-for cause of the employer's adverse action, *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013), through direct evidence of retaliatory intent or circumstantial evidence showing that (1) "the employer had knowledge of the employee's protected activity" and (2) "the adverse action took place shortly after that activity," *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985). While temporal proximity between the protected activity and the adverse action is sufficient to establish causation, the two events must be "very close" in time. *See Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 83 (D.D.C. 2013) (quoting *Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012).

It is undisputed that Mr. Regis engaged in protected activity when he "filed a formal EEO Complaint concerning [his supervisors'] discriminatory conduct." Compl. ¶ 19; *see Holbrook v. Reno*, 196 F.3d 255, 263 (D.C. Cir. 1999) (filing an EEO complaint is protected activity under Title VII). Mr. Regis has also sufficiently alleged that he suffered adverse actions by his employer because of his protected activity. Mr. Regis's supervisors "soon after [he filed his EEO complaint]

placed [him] on a PIP," Compl. ¶ 19, and following his completion of the PIP, they "gave [him] an unacceptable performance rating for the rating year," *id.* ¶ 14. "[C]ourts in this jurisdiction consistently have held that the imposition of a PIP—even one that does not result in a negative impact on salary, grade or performance appraisal—can constitute an adverse action" for a retaliation claim. *Crowley v. Vilsack*, 236 F. Supp. 3d 326, 331 (D.D.C. 2017) (collecting cases). The same goes for "lowered performance review[s]." *Turner v. Buttigieg*, No. 23-cv-1665, 2024 WL 4346332, at *9 (D.D.C. Sept. 30, 2024).

All that remains to be determined is whether Mr. Regis has established a causal link between his protected activity and the materially adverse employment actions. Mr. Regis relies on the temporal proximity between his protected activity and the subsequent adverse employment actions. *See* Compl. ¶ 19 ("Regis then sought EEO counseling and filed a formal EEO complaint concerning the discriminatory conduct. Regis's supervisors soon after placed on a PIP."). Mr. Regis specifies when he filed his formal EEO complaint, *see* Compl. ¶ 5 ("Plaintiff timely filed a formal complaint on December 31, 2022."), pleads that his "supervisors were aware of his protective activity," *id.* ¶ 27, and alleges that the adverse employment actions took place "soon after," *id.* ¶ 19. This is enough at the motion to dismiss stage. *See Swierkiewicz*, 534 U.S. at 511–14 (holding that the plaintiff need not plead all elements of his prima facie case in the complaint).

The Defendant argues that specific dates are necessary to establish a causal nexus. *See* Def.'s Mot. at 9. But drawing all inferences in the Plaintiff's favor, temporal proximity is met where the Complaint alleges that retaliatory action took place "soon after" the protected activity. *See, e.g.*, *Dave v. Lanier*, 606 F. Supp. 2d 45, 52 (D.D.C. 2009) ("drawing all reasonable inferences in the plaintiff's favor, the complaint suggests that these adverse acts began soon after he returned from sick leave" even though "the plaintiff does not specify the exact interval between the

protected activity and the allegedly retaliatory acts"); *Brown v. Snow,* 407 F. Supp. 2d 61, 66 (D.D.C. 2005) ("To demonstrate causation in the absence of direct evidence, . . . the plaintiff must show that the employer knew of the protected activity and that the adverse action occurred soon thereafter.").

### C.    Hostile Work Environment

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). This language makes it unlawful for an employer to "requir[e] people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Because in this Circuit, "[c]ourts apply the same Title VII standard to ADEA hostile work environment claims," this Court will analyze Mr. Regis's hostile work environment claims under Title VII and the ADEA as one. *McArdle v. District of Columbia*, No. 19-cv-3637, 2025 WL 1167956, at *8 (D.D.C. April 22, 2025) (collecting cases).

To prevail on a retaliatory hostile-work-environment claim, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201 (D.C. Cir. 2008) (quoting *Harris*, 510 U.S. at 21). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch*, 550 F.3d at 1201 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)). "The Supreme Court has made it clear that 'conduct must be extreme to amount to a change in the terms and

conditions of employment.'" *George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005) (quoting *Faragher*, 524 U.S. at 788). By adhering to these standards, a court "ensure[s] that Title VII does not become a general civility code" that involves the courts in policing "the ordinary tribulations of the workplace[.]" *Faragher*, 524 U.S. at 788 (cleaned up).

Mr. Regis argues that he was subject to a hostile work environment that was so severe and pervasive that it altered the conditions of his employment. But plaintiffs face a high bar in hostile work environment claims, *see Baloch*, 550 F.3d at 1201 (D.C. Cir. 2008), and Mr. Regis cannot meet his burden.

*First,* Mr. Regis contends that his supervisors "placed [him] on a Performance Improvement Plan," Compl. ¶ 11, "falsely contended that [he] was not on track to complete the requisite number of cases for acceptable performance and that the cases Regis had processed contained too many errors," *id.*, and "gave [him] an unacceptable performance rating for the rating year," *id.* ¶ 14; *see also id.* ¶ 15 (supervisors subjected Mr. Regis to "false accusations concerning the pace in which he was completing work and the manner in which he was processing cases added unduly to the typical stress"); *id.* ¶ 17 (supervisors "subjected [Mr.] Regis to verbal reprimands concerning his performance . . . includ[ing] his pace of work and the method in which he completed case assignments"). But performance improvement plans and criticisms of work, while unpleasant, are part of the daily churn of a workplace and thus do not establish a hostile work environment. *See, e.g.*, *Sims v. Sunovion Pharms., Inc.*, No. 17-cv-2519, 2020 WL 6822696, at *22 (D.D.C. Nov. 20, 2020) ("Many of the challenged actions here—including [the] Plaintiff's performance review and placement on a [Performance Improvement Plan]—are the type of 'work-related actions by supervisors' that provide insufficient grounds for a hostile work environment claim." (quoting *Grosdidier v. Chairman, Broad. Bd. of Governors*, 774 F. Supp. 2d 76, 111

(D.D.C. 2011))); *Yuvienco*, 2024 WL 4957481, at *5 (collecting cases); *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (explaining that "disparaging remarks" and "'lowered performance evaluations'" cannot "be characterized as sufficiently intimidating or offensive in an ordinary workplace context").

*Second*, Mr. Regis claims that he was subject to "greater scrutiny" including "weekly check-ins with a non-supervisory employee . . . that took away from [his] normal work day[.]" Compl. ¶¶ 15, 16. But these are typical employment grievances that do not establish a hostile work environment. *See Nurriddin*, 674 F. Supp. 2d at 94 ("[T]he removal of important assignments . . . and close scrutiny of assignments by management [cannot] be characterized as sufficiently intimidating or offensive in an ordinary workplace context.").

*Third*, the allegations that Mr. Regis's supervisors "canceled [his] telework privileges," Compl. ¶ 18, are insufficiently severe or offensive to support a hostile work environment, *see, e.g.*, *Xie v. Chao*, No. 21-cv-1289, 2022 WL 3585669, at *5 (D.D.C. Aug. 22, 2022) (concluding that "[d]enying requests for telework" was insufficient for a hostile work environment); *Tyes-Williams v. Whitaker*, 361 F. Supp. 3d 1, 8 (D.D.C. 2019) (concluding that "a plaintiff's being denied . . . the opportunity to telecommute," among other things, "came 'nowhere near satisfying the . . . standard' for a hostile work environment" (quoting *Beckwith v. Ware*, 174 F. Supp. 3d 1, 5–6 (D.D.C. 2104))); *Koch v. White*, 134 F. Supp. 3d 158, 167–68 (D.D.C. 2015) (finding that denial of a request for "part-time telework arrangement" did not create hostile work environment claim).

At bottom, Mr. Regis's complaints of typical "work-related actions by supervisors" are not sufficiently severe or pervasive to support a hostile work environment claim. *Munro v. LaHood*, 839 F. Supp. 2d 354, 366 (D.D.C. 2012); *see, e.g.*, *Crews v. Carson*, No. 19-cv-3538, 2020 WL

12948520, at \*5–7 (D.D.C. Oct. 16, 2020) (low performance reviews, unfair scrutiny, interference with management of subordinates, and a letter of reprimand were insufficient to establish a hostile work environment); *Davila v. Mayorkas*, No. 22-cv-357, 2023 WL 2072455, at \*9 (D.D.C. Feb. 17, 2023) (collecting other cases).

### D.      Compensatory Damages under the ADEA

The Defendant urges dismissal of the Plaintiff's request for compensatory damages under the ADEA, arguing that the United States has not waived its sovereign immunity for such damages. *See* Def.'s Mot. at 12. But the Plaintiff has clarified that he is not seeking compensatory damages under the ADEA. *See* Pl.'s Opp'n at 10 ("The Complaint Does Not Pray for Compensatory Damages Under the ADEA."). That settles that matter.

### CONCLUSION

For the foregoing reasons, the Court denies in part and grants in part the Defendant's Motion to Dismiss, ECF No. 9.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   June 4, 2025