**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TROY REGIS,

       *Plaintiff,*

    v.

MARKWAYNE MULLIN, Secretary of
Homeland Security,[1]

       *Defendant*.

Civil Action No. 24-2405 (SLS)

Judge Sparkle L. Sooknanan

## MEMORANDUM OPINION

Troy Regis served as a fingerprint specialist for the Secret Service for over a decade until the agency fired him. Towards the end of his tenure, he faced increasing scrutiny from his supervisors about his performance. They claimed that his work was too slow, that he made too many errors, and that he was not demonstrating the knowledge and expertise necessary to operate independently. When Mr. Regis' performance did not improve, his supervisors put him on a formal performance improvement plan. And when he failed to meet the standards set forth in that plan, they fired him.

Mr. Regis claims that his supervisors' increased scrutiny of his performance was unjustified and that he was singled out for mistreatment because he was older than many of his colleagues and African American. He brought this lawsuit against the Secretary of Homeland Security alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act (ADEA). The Secretary now moves for summary judgment, arguing that no reasonable jury could agree with Mr. Regis that his supervisors acted

---

[1] The current Secretary is substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

unlawfully. For the reasons explained below, the Court grants the Secretary's motion in part and denies it in part. Mr. Regis may proceed to trial on his claims that his performance improvement plan was discriminatory and retaliatory.

## BACKGROUND

### A.    Factual Background

The Court draws the facts from the Parties' Statements of Material Facts and the underlying materials referenced in those statements. *See* Def.'s Statement of Undisputed Material Facts (DSOF), ECF No. 24-1; Pl.'s Statement of Material Facts (PSOF), ECF No. 26 at 2–12; Def.'s Resp. to PSOF, ECF No. 30-1. The Court assumes the facts in those statements to be true unless they have been specifically disputed, and it assumes the truth of other undisputed statements in the record. *See* Fed. R. Civ. P. 56(e)(2); *see also* LCvR 7(h)(1).[2]

Mr. Regis is an African American man who was 59 years old when the events at issue took place. DSOF ¶ 4; Compl. ¶ 6, ECF No. 1. For fourteen years, beginning in 2010, Mr. Regis was employed as a fingerprint specialist by the Secret Service in their Forensics Services Division (FSD). DSOF ¶ 1. Mr. Regis' primary responsibility in that role was to "conduct[] forensic examinations and analysis of physical evidence and material to identify latent prints and/or impressions in support of the Agency's investigative mission regarding criminal activities." DSOF ¶ 2. During the period at issue, his first-level supervisor was FSD Branch Chief Brian Jones, and his second-level supervisor was Laboratory Director Kelli Tippett (then Kelli Lewis). DSOF ¶ 5. Special Agent in Charge (SAIC) Glenn Dennis supervised the FSD as a whole. DSOF ¶ 19.

---

[2] Local Rule 7(h) provides that "the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1).

In late July 2022, Mr. Jones and Ms. Tippett met with Mr. Regis and told him that "his performance had been declining since the post-COVID return to office" in February of that year. DSOF ¶ 12. Relying on case statistics from the FSD's "Laboratory Information Management System," they informed Mr. Regis that his rates for case completion and average turnaround time were lagging and that his "productivity was below standards compared to his peers." DSOF ¶¶ 12–13; *see also* ECF No. 24-3 at 106.[3] As a result, they required that he begin "attend[ing] weekly check-in meetings" with a lead fingerprint specialist to discuss the status of his assignments. DSOF ¶ 14. Mr. Regis disputes the accuracy of and motivations behind these statements from his supervisors. Opp'n 23–24, ECF No. 26. He notes that he had received an acceptable performance rating for the appraisal period that concluded just one month earlier, PSOF ¶ 10; DSOF ¶ 10; ECF No. 24-3 at 265; and asserts that "there was no standard or specific policy concerning the pace of completion," PSOF ¶ 14. He also contends that his work pace was consistent with his peers. Opp'n 23–24.

On September 1, 2022, Mr. Jones reached out to the Secret Service's Employee Relations Division to "discuss [Mr. Regis'] declining performance and his options for how to handle the situation." DSOF ¶ 15; PSOF ¶ 17. On September 9, 2022, Mr. Jones and Ms. Tippett again met with Mr. Regis to "discuss performance expectations." DSOF ¶ 16. They informed him that beginning the following week, his mandatory weekly check-ins with a lead fingerprint specialist would become daily check-ins, and that his "core telework participation" was being "terminated due to underperformance and the need for additional in-office support." DSOF ¶¶ 16–17.

---

[3] The Parties' summary judgment filings include many exhibits that have multiple layers of internal pagination. For clarity, the Court cites the document and page numbers assigned by the Court's Electronic Case Filing (ECF) system.

3

On September 23, 2022, Mr. Regis sent an email to Ms. Tippett, Mr. Jones, and SAIC Dennis, "expressing his concerns about the termination of his telework agreement and that he felt he was being treated unfairly." DSOF ¶ 19. Mr. Regis met with SAIC Dennis on September 26, 2022, to discuss his concerns and soon after, on November 1, 2022, filed an informal complaint with the agency's Equal Employment Opportunity (EEO) Office alleging retaliation and discrimination based on race and age. DSOF ¶ 22; ECF No. 24-3 at 10. About two months later, on December 31, 2022, Mr. Regis filed a formal complaint with the EEO Office advancing the same allegations. DSOF ¶ 23; ECF No. 24-3 at 4. Mr. Jones was aware of Mr. Regis' complaints and "submitted statements to the EEO Counselor at the informal EEO complaint stage and during the formal EEO investigation." Def.'s Resp. to PSOF ¶ 22.

On January 30, 2023, Mr. Regis received his "midyear progress review," which again detailed concerns from his supervisors about his case completion rate and errors in his casework. DSOF ¶ 24. Around that same time, Mr. Jones again contacted the Employee Relations Division, this time about a proposed performance improvement plan (PIP) for Mr. Regis—stating that he "would like to be able to start the PIP process as soon as possible." ECF No. 26-6 at 7–8. It took roughly two months for the PIP to be edited and finalized. *Id.* at 1–8. And on April 19, 2023, Mr. Regis was placed on the PIP. DSOF ¶ 25.

The PIP, which was signed by Mr. Jones, notified Mr. Regis that his performance as a fingerprint specialist was at "the Unacceptable level" for various reasons, including (1) that Mr. Regis was "fail[ing] to complete [his] assigned tasks and responsibilities within the established timelines" in his performance plan, (2) that his "technical reports require[d] too many corrections," and (3) that "his case results demonstrate[d] that [he was] lacking the knowledge and skills (including use of technology and tools . . .) to independently perform the full range of assignments expected of a GS-13 Fingerprint Specialist." ECF No. 24-3 at 186–187. The PIP was effective "for

4

60 calendar days," and if Mr. Regis' "performance [did] not reach the Acceptable level by the conclusion of the PIP period," the Secret Service could "reassign, demote, or remove [him] from [his] position." *Id.* at 186.

On June 4, 2026, Mr. Regis amended his formal EEO complaint to challenge the imposition of the PIP. PSOF ¶ 44; ECF No. 24-3 at 30–31. When the PIP period concluded later that month, Mr. Jones informed Mr. Regis that his "performance did not reach the Acceptable level" and that he would "be notified of the decision to reassign, demote, or remove [him]." DSOF ¶ 27; ECF No. 24-8. One month later, Mr. Regis received his 2023 performance appraisal, signed by Mr. Jones and Ms. Tippett, which rated his performance as "Unacceptable" for the 2022–2023 appraisal period. DSOF ¶ 28; ECF No. 24-11 at 2. Mr. Regis was fired in February 2024. ECF No. 26-1 at 885.

### B.    Procedural Background

Mr. Regis filed this lawsuit in August 2024, alleging discrimination, retaliation, and hostile work environment claims under Title VII and the ADEA. Compl. In June 2025, the Court partially granted a motion to dismiss by the Secretary and dismissed Mr. Regis' hostile work environment claim. *See* Mem. Op., ECF No. 14; *see also Regis v. Noem*, No. 24-cv-2405, 2025 WL 1580808, at *2 (D.D.C. June 4, 2025). After discovery, the Secretary moved for summary judgment on the remainder of Mr. Regis' claims. Mot., ECF No. 24. That motion is fully briefed and ripe for review. Opp'n; Def.'s Reply, ECF No. 30.

## LEGAL STANDARDS

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The burden is on the movant to make the initial showing of the absence of any genuine issues of material fact." *Ehrman v. United States*, 429 F. Supp. 2d 61, 66 (D.D.C.

2006) (citations omitted). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Est. of Parsons v. Palestinian Auth.*, 651 F.3d 118, 123 (D.C. Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## DISCUSSION

Mr. Regis brings claims of discrimination and retaliation under Title VII and the ADEA. Title VII prohibits the federal government from discriminating against its employees based on race, 42 U.S.C. § 2000e–16, and from retaliating against them for complaining about or otherwise opposing discriminatory practices, *see id.* § 2000e–3(a); *Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015)). "The ADEA likewise prohibits the federal government from discriminating against its employees aged forty or older on the basis of age, . . . and from retaliating against them for filing age discrimination complaints." *Kilby-Robb v. Devos*, 246 F. Supp. 3d 182, 193 (D.D.C. 2017) (first citing 29 U.S.C. § 633a(a); and then citing *Gomez–Perez v. Potter*, 553 U.S. 474, 479, (2008)); *see also* 29 C.F.R. § 1614.101 ("No person shall be subject to retaliation for opposing any practice made unlawful" by Title VII or the ADEA or "for participating in any stage of administrative or judicial proceedings under those statutes.").

When an employee brings discrimination or retaliation claims under either statute based on circumstantial evidence of their employer's intent, their claims are evaluated under the familiar burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See DeJesus v. WP Co. LLC*, 841 F.3d 527, 532 (D.C. Cir. 2016) (Title VII and ADEA discrimination); *Johnson v. Interstate Mgmt. Co., LLC*, 849 F.3d 1093, 1099 (D.C. Cir. 2017) (Title VII and ADEA retaliation). Under this framework, an employee must first make out a prima facie case of retaliation or discrimination. *Morris v. McCarthy*, 825 F.3d 658, 668 (D.C. Cir. 2016). For discrimination, this means that a plaintiff must establish (1) that he is part of a protected class, (2) that he "suffered a cognizable adverse employment action," and (3) that "the action gives rise

6

to an inference of discrimination." *Walker*, 798 F.3d at 1091. For a retaliation claim, he must establish (1) that he engaged in activity protected by Title VII or the ADEA, and (2) that the employer took adverse action against him (3) because of his protected conduct. *Id.* at 1091–92.

Once an employee has made out a prima facie case, "[t]he employer must then come forward with a legitimate, nondiscriminatory or non-retaliatory reason for the challenged action." *Morris*, 825 F.3d at 668. If the employer meets this burden, the Court "need not—*and should not*—decide whether the plaintiff actually made out a prima facie case." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). "Instead, the Court should decide only the ultimate question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory and non-retaliatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, or age, or retaliated against the employee for engaging in protected activity?" *Kilby-Robb*, 246 F. Supp. 3d at 193 (cleaned up) (quoting *Brady*, 520 F.3d at 494). If the Court answers that question in the affirmative, the employee survives summary judgment. *Morris*, 825 F.3d at 668.

Here, there is no dispute that Mr. Regis—as a 59-year-old African American man—is protected from race and age discrimination by Title VII and the ADEA. The Secretary also does not dispute that Mr. Regis engaged in protected activity by filing EEO discrimination complaints. *See* Mot. 36 (arguing only that Mr. Regis "is unable to establish a causal connection between his protected activity and any of management's actions"). The Secretary instead makes two main arguments in seeking summary judgment. First, he argues that Mr. Regis cannot state a prima facie case for discrimination or retaliation because not all his claims have been administratively exhausted. Second, he contends that Mr. Regis has not identified sufficient evidence from which a jury could find that any actionable adverse actions were discriminatory or retaliatory. The Court

addresses these arguments in turn, ultimately concluding that Mr. Regis' claims based on his PIP survive summary judgment. The remaining claims must be dismissed on exhaustion grounds.[4]

### A.    Administrative Exhaustion

Before filing suit under Title VII or the ADA, federal employees must exhaust their administrative remedies. *Albert v. Perdue*, No. 17-cv-1572, 2019 WL 4575526, at *8 (D.D.C. Sept. 20, 2019) (citing 42 U.S.C. §§ 2000e–16(c), 633a(b)–(d)). "This administrative exhaustion requirement applies to all discrete acts of discrimination or retaliation." *Id.* (quotation omitted). It requires that a federal employee contact an EEO counselor to complain about any "allegedly discriminatory action" within 45 days of its occurrence. *Steele v. Schafer*, 535 F.3d 689, 691 (D.C. Cir. 2008) (citing 29 C.F.R. § 1614.105(a)(1)). The 45-day clock begins to run "when an employee has a reasonable suspicion of a discriminatory action." *Nguyen v. Mabus*, 895 F. Supp. 2d 158, 171 (D.D.C. 2012) (cleaned up). And "each discriminatory or retaliatory act starts a new clock for filing charges" related to that specific act. *Albert*, 2019 WL 4575526, at *8 (cleaned up) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

If a matter cannot be resolved informally after an employee's initial contact with an EEO counselor, the counselor must inform the employee of his right to sue, and the employee "must file a formal complaint of discrimination with the agency." *Nguyen*, 895 F. Supp. 2d at 171. "The agency must then investigate the matter, after which the complainant may demand an immediate final decision from the agency or a hearing before an EEOC administrative judge." *Id.* (citing 29 C.F.R. §§ 1614.106(e)(2), 1614.108(f)). At "any time prior to the conclusion of the

---

[4] The Secretary also argues that "several" of Mr. Regis' claims "do not involve any adverse personnel action or materially adverse actions." Mot. 19, ECF No. 24. The Court does not understand this argument to apply to Mr. Regis' claims premised on the PIP because the Secretary makes no specific arguments regarding why the PIP is not actionable. *Id.* at 19–22. Because Mr. Regis did not adequately exhaust his administrative remedies for any of the other actions to which this argument might apply, the Court need not reach this issue.

investigation," an employee may amend his complaint "to include issues or claims like or related to those raised in the complaint." 29 U.S.C. § 1614.106(d). After receiving a final decision from the agency, the complainant has 90 days to file a civil action in federal court. *Nguyen*, 895 F. Supp. 2d at 171 (citing 29 C.F.R. § 1614.407). A discrimination lawsuit brought after an employee engages in this process is limited to the claims that "were actually part of the administrative charge." *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 526 (D.C. Cir. 2019). The overarching purpose of this scheme—and the administrative exhaustion requirement—is "to give federal agencies an opportunity to handle matters internally whenever possible, and to impose on employing agencies the opportunity as well as the responsibility to right any wrong that [they] might have done." *Niskey v. Kelly*, 859 F.3d 1, 7 (D.C. Cir. 2017) (cleaned up).

Mr. Regis premises his discrimination and retaliation claims on two allegedly adverse actions: (1) his placement on a PIP in April 2023, and (2) his rating of "unacceptable" on his performance appraisal in July 2023. Compl. ¶¶ 21, 28; Opp'n 1.[5] The Secretary concedes exhaustion for Mr. Regis' claims "related to his placement on the PIP." Mot. 15 n.9. But he contends that Mr. Regis cannot advance claims based on his performance rating because he

---

[5] The Secretary's motion attacks the legal sufficiency of four other actions that Mr. Regis might have potentially asserted as bases for discrete discrimination and retaliation claims: (1) that he was excluded from training opportunities and other assignments; (2) that he was required to do weekly check-ins with a non-supervisory lead fingerprint specialist; (3) that his telework privileges were revoked; and (4) that he was subject to verbal reprimands regarding his performance. Mot. 10–17. In opposing dismissal, Mr. Regis says that he is not advancing discrete discrimination or retaliation claims on these actions but merely relying on them as "evidence of discrimination." Opp'n 15, ("Several of the events noted by the EEOC counselor and highlighted by the Agency in their motion are simply evidence or facts which support [Mr.] Regis' overall discrimination claims."); 20–21 (noting that Mr. Regis' Complaint "focuses on the PIP and the unacceptable rating" and arguing that Mr. Regis exhausted his administrative remedies for those "actionable personnel actions"), ECF No. 26; *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102 (2002) (an employee may use "prior acts as background evidence in support of a timely claim"). For clarity, if Mr. Regis intends to bring discrete discrimination and retaliation claims based on these four actions, he has conceded that they fail as unexhausted.

received the rating *after* he filed his formal EEO complaint and did not amend his complaint to challenge the rating. Mot. 17. In a single paragraph, Mr. Regis responds that his performance rating and PIP are "directly tied"—*i.e.*, that the rating "was a natural offset of being placed on [the] PIP"—suggesting that he exhausted his administrative remedies for the former by pursuing a charge about the latter. Opp'n 20–21. On this briefing, the Court cannot find for Mr. Regis.

In urging dismissal, the Secretary relies on the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), which involved a plaintiff's ability to advance discrimination claims based on past acts not included in his EEO charge. Prior to *Morgan*, it was widely established, including in this Circuit, that federal employees could "litigate unfiled claims" not explicitly raised in an EEO charge if those claims were "like or reasonably related to claims they did file with their agencies." *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (cleaned up); *see also Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (providing that a Title VII lawsuit following an EEOC charge "is limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations" (quotation omitted)). But in *Morgan*, the Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 536 U.S. at 113.

Despite the Secretary's primary reliance on *Morgan*, Mr. Regis does not even mention it. Rather, he spends a total of five sentences arguing in conclusory fashion that he exhausted his claims regarding his unfavorable performance rating. Opp'n 20–21. With this inadequate response, and by failing to even mention *Morgan*, Mr. Regis has conceded that *Morgan* forecloses his exhaustion arguments regarding his performance rating. *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.");

*Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) ("A party forfeits an argument by mentioning it only 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.'" (quoting *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005)).[6] He has also conceded any arguments about equitable tolling by failing to respond to the Secretary's arguments on that issue.

### B.      Merits

Turning to the merits, the Court considers whether Mr. Regis has produced sufficient evidence from which a jury could find that the agency issued him a PIP because of his race, age, or prior complaints. The Court concludes that Mr. Regis has carried his burden.

Recall that once a plaintiff has made out a prima facie case of discrimination or retaliation, the "employer must then come forward with a legitimate, nondiscriminatory or non-retaliatory reason for the challenged action." *Morris*, 825 F.3d at 668. If the employer proffers such a reason, the burden shifts back to the plaintiff to point to sufficient evidence from which a reasonable jury could find that the employer's asserted reason was pretextual and the employer actually took the

---

[6] The D.C. Circuit has not addressed "whether *Morgan* did in fact overtake" its line of cases regarding the "like or reasonably related to" exception to the exhaustion requirement. *See Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (cleaned up); *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 527 n.1 (D.C. Cir. 2019); *Weber v. Battista*, 494 F.3d 179, 184 (D.C. Cir. 2007). And courts have not uniformly applied *Morgan* in cases like this one where a plaintiff fails to amend an EEO charge to include subsequent adverse employment actions. For example, some courts in this District have read *Morgan* narrowly to permit judicial review of discriminatory and retaliatory actions occurring after the filing of an administrative charge if they are sufficiently related to the acts alleged in the charge. *See Hazel v. WMATA*, No. 02-cv-1375, 2006 WL 3623693, at *8 (D.D.C. Dec. 4, 2006); *Lewis v. D.C.*, 535 F. Supp. 2d 1, 8 (D.D.C. 2008). Those courts have reasoned that the exhaustion requirement exists to give an agency notice of an employee's charges and an opportunity to resolve them administratively before being sued in district court—so permitting "lawsuits alleging acts post-dating . . . administrative charges" does not defeat that purpose if "the scope of the claims in the lawsuit" are no broader than the "scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination." *Hazel*, 2006 WL 3623693, at *8 (cleaned up). That approach may well be sound. But whether it survives *Morgan* is a question that this Court leaves for another day in light of Mr. Regis' failure to make such an argument.

11

action in question based on the employee's race or age, or to retaliate against the employee for engaging in protected activity. *Kilby-Robb*, 246 F. Supp. 3d at 193. "A plaintiff may support an inference that the employer's stated reasons were pretextual, and the real reasons were prohibited discrimination or retaliation, by citing the employer's better treatment of similarly situated employees outside the plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established procedures or criteria, or the employer's pattern of poor treatment of other employees in the same protected group as the plaintiff, or other relevant evidence that a jury could reasonably conclude evinces an illicit motive." *Walker*, 798 F.3d at 1092 (citing *Brady*, 520 F.3d at 495 n.3). For retaliation, "[t]he temporal proximity between an employee's protected activity and [his] employer's adverse action is a common and often probative form of evidence." *Id.* (citing *Hamilton v. Geithner*, 666 F.3d 1344, 1357–59 (D.C. Cir. 2012).

The Secretary asserts that Mr. Regis received a PIP because his performance was deficient. Specifically, he contends that Mr. Regis had longstanding performance issues that the agency had taken various steps over the years to correct, and that none of those steps had resulted in consistently improved performance. *See* Mot. 28–36. Under the circumstances, the Secretary asserts, it was legitimate and reasonable for Mr. Regis' superiors to place him on a PIP. *Id*. at 28–29. This reason is legitimate and nondiscriminatory, and the Secretary has identified plenty of evidence from which a jury could credit it and rule in the agency's favor. *See* Mot. 22–33.

On the other side of the ledger, however, Mr. Regis identifies evidence that could support a different conclusion. Opp'n 17–20. The Court focuses on four categories of evidence.

*First,* Mr. Regis has adduced evidence casting doubt on whether his performance was as deficient as the Secretary claims. Along with his own testimony that he was unfairly "targeted" and "told outright lies about [his] performance," ECF No. 26-1 at 1140, he points to statistical data showing that he completed more cases during the relevant rating period than at least two other

fingerprint specialists, ECF 26-7 at 1; that his case turnaround time was faster than eight other specialists; *id.* at 33; and that many other specialists frequently made errors of the sort that he says he was unfairly critiqued for, ECF No. 31 at 63–93. And he points out that no other specialist was similarly placed on a PIP. Opp'n 18; *see also* Def.'s Resp. to PSOF ¶ 40 (admitting that none of the specialists with lower case completion rates than Mr. Regis in fiscal year 2023 were placed on PIPs). This evidence supports that the agency's explanations for Mr. Regis' PIP may have been "inconsistent," "dishonest," or a "deviation from established procedures or criteria." *Walker*, 798 F.3d at 1092.

*Second,* Mr. Regis points to evidence supporting that his supervisors showed preferential treatment to "similarly situated employees outside [his] protected group[s]" and had a "pattern of poor treatment" of employees, like him, who were African American and/or over 40. *Id*. Mr. Regis himself testified in his Merit Systems Protection Board proceeding that "the younger, White examiners [got] preferential treatment," including being offered professional opportunities that "older and Black" employees were not told about. ECF No. 26-1 at 1139–41. The testimony of other fingerprint specialists corroborated that claim. Mallory McCormick, for example, testified that she could "give multiple examples" of ways that Ms. Tippett and Mr. Jones had appeared to discriminate against "African American and older examiners." *Id.* 578–79. She described two specific instances where emails from supervisors sharing training and professional opportunities were not sent to "African American and older examiners." *Id.* She also recalled hearing comments by Ms. Tippett that evinced discriminatory animus based on age and race. On at least one occasion, Ms. Tippett remarked that "older examiners were resistant to change and helping." *Id.* at 579, 582. On another, Ms. Tippett expressed incredulity at the idea that she might promote an African American employee who Ms. McCormick believed was highly qualified. *Id.* at 580. Karen Baxter Benns similarly testified about comments that Ms. Tippett made that older employees "made too

much money" and could not work as fast "as some of the youngers." *Id.* at 939–40. And Christopher Cavazos testified that "there were occasions where it seemed" that some specialists "were favored over others" and those favored were not African American or older. *Id.* at 990–91. Mr. Cavazos also described a specific incident where he felt that an older specialist received "too harsh" a punishment for relatively routine errors that were caught in the "review process" and had no "detrimental" effect. *Id.* at 1001–1002. This evidence, too, supports Mr. Regis' claim of pretext.

*Third*, Mr. Regis points to "other relevant evidence that a jury could reasonably conclude evinces an illicit motive." *Walker*, 798 F.3d at 1092. Mr. Regis and other fingerprint specialists testified that their work environment was "stressful," "hostile," and/or "toxic," because of Ms. Tippett and other supervisors. *See* ECF No. 26-1 at 572–73 (testimony of Ms. McCormick), 933–34 (testimony of Ms. Benns), 1000–01 (testimony of Mr. Cavazos that to the extent Ms. Tippett did not "contribute[]" to the "toxic work environment" she did not "actively try to" address it). And a number of specialists (some of whom were over 40 and African American) decided to leave or retire in a period of a few years. PSOF ¶ 64. While this evidence does not by itself provide proof of race or age discrimination, at least two of the specialists explained that they and others left or retired at least in part because of concerns about discrimination. ECF No. 26-1 at 618–20, 630–31 (Ms. McCormick describing how she and other specialists left due to hostility and concerns about discrimination), 932–40 (Ms. Benns describing how prior to her departure she felt "targeted" and "pushed aside" because of her age and that Ms. Tippett was trying to "force[] out" older employees). Mr. Regis also testified that Ms. Tippett's supervisory responsibilities had been temporarily adjusted in response to employees' discrimination complaints—something Ms. Tippett's own testimony at least partially corroborated. *See* ECF No. 26-1 at 1142–43 (Mr. Regis stating his belief that at least two and possibly three other employees "asserted complaints of discrimination" against Ms. Tippett), 319–21 (Ms. Tippett acknowledging that her

14

responsibilities were temporarily adjusted and that she knew "there were employees that were unhappy with [her] leadership style"); *see also* Def.'s Resp. to PSOF ¶¶ 61–63.

*Fourth*, and finally, as it relates to Mr. Regis' retaliation claim, the "temporal proximity between [his] protected activity" and his supervisors' decision to place him on a PIP is probative evidence that may convince a jury that the PIP was retaliatory. *Walker*, 798 F.3d at 1092. Mr. Regis first informally sought EEO counseling on November 1, 2022. ECF No. 24-3 at 10. Mr. Jones acknowledged that he was advised of Mr. Regis' informal complaint shortly after it was filed. ECF No. 26-1 at 707; Def.'s Resp. to PSOF ¶ 22. Mr. Regis filed his formal EEO Complaint on December 31, 2022. ECF No. 26-5. Shortly thereafter, Mr. Jones reached out to the Employee Relations Division expressing a desire to implement a PIP "as soon as possible." ECF No. 26-6 at 7–8. Looking at the temporal proximity of these events—as well as other evidence in the record supporting that Mr. Regis' performance was comparable to that of other specialists—a reasonable jury could find that Mr. Regis' supervisors placed him on a PIP in retaliation for protected activity, not because his performance was actually deficient.

In sum, Mr. Regis' discrimination and retaliation claims are not airtight. The Secretary may well convince a jury that the PIP was a naturally escalating step in a legitimate process aimed at correcting Mr. Regis' performance deficiencies—a process initiated before he complained about discrimination. *See* Reply 16. But on this record, a reasonable jury could conclude that the Secretary's asserted reasons were pretext for discrimination and retaliation. Determining whose story is closer to the truth requires assessing the credibility of witnesses, weighing the evidence, and drawing legitimate inferences. Such determinations "are jury functions, not those of a judge" at summary judgment. *Rothberg v. Xerox Corp.*, No. 12-cv-617, 2016 WL 10953882, at *10 (D.D.C. Feb. 3, 2016) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000)); *see also Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (when ruling on summary

judgment, judges "are not to make credibility determinations or weigh the evidence"). For now,

Mr. Regis' discrimination and retaliation claims premised on his PIP survive dismissal.[7]

## CONCLUSION

For all these reasons, the Court grants in part and denies in part the Defendant's Motion

for Summary Judgment, ECF No. 24.

A separate order will issue.

$$\overline{\hspace{3cm}}$$

SPARKLE L. SOOKNANAN
United States District Judge

Date:    July 24, 2026

---

[7] At trial Mr. Regis may only pursue discrimination claims based on race and age. His Opposition appears to suggest that he is alleging discrimination based on national origin. *See* Opp'n 14 ("The Agency Engaged in a Pattern of Race, National Origin and Age Discrimination[.]"), 28 ("[T]he Agency's reasons for placing [Mr.] Regis on a PIP and rating his performance unacceptable . . . are a pretext for race, age and national origin discrimination."). But his Complaint does not include a national original claim. *See* Compl. at Section V, Claims, ECF No. 1 (including discrimination claims based only on race and age); *see also Citizens for Resp. & Ethics in Washington v. Cheney*, 593 F. Supp. 2d 194, 217 (D.D.C. 2009) ("It is well-established that a plaintiff cannot add or amend claims through an opposition to a motion for summary judgment.").

16